FEDERAL ELECTION
COMMISSION, Petitioner,

v.

The LAROUCHE CAMPAIGN,
INC., Respondent.

Misc. Action No. M18–304 (LLS).

United States District Court,
S.D. New York.

Aug. 25, 1986.

---

Federal Election Com'n, Washington, D.C., Charles N. Steele, Gen. Counsel, Ivan Rivera, Asst. Gen. Counsel (Michael A. Dymersky, of counsel), for petitioner.

Anderson & Associates, P.C., Boston, Mass. (Odin P. Anderson, Robert L. Rossi, Tracy Roach, Boston, Mass., Mayer Morganroth, New York City, of counsel), for respondent.

## OPINION AND ORDER

STANTON, District Judge.

Petitioner Federal Election Commission (the "FEC" or "Commission") has applied pursuant to 2 U.S.C. § 437d(b) for enforcement of its combined subpoena and order issued to respondent The LaRouche Campaign ("TLC") in connection with the Commission's investigation into possible violations by TLC of the Federal Election Campaign Act, as amended, 2 U.S.C. § 431 *et seq.*, ("the Act") and the Presidential Primary Matching Payment Account Act, as amended, 26 U.S.C. § 9031 *et seq.*, ("the Matching Fund Act"). In opposition TLC makes numerous arguments, primarily challenging the Commission's purpose and motivations for its investigations of TLC, which have been addressed and disposed of today in this court's decision in *Spannaus v. Federal Election Commission*, 641 F.Supp. 1520 (S.D.N.Y., 1986). To be ad-

dressed here is TLC's remaining assertion that the subpoena and order are too broad, in violation of TLC's First Amendment rights.

On December 21, 1984 the Commission opened MUR 1852 and commenced an investigation, after finding reason to believe that TLC had violated the Act and Matching Fund Act by (1) reporting as contributors persons who had not intended to make contributions or loans to TLC, (2) including in its reports to the Commission debts which were incurred without the consent of the creditors, and (3) presenting the Commission with information that misrepresented the intent of individuals listed as contributors and lenders and the totals of monies received. *See* 2 U.S.C. § 437g(a)(2). The Commission's "reason to believe" finding is based on irregularities discovered during the course of an audit of TLC, as well as on other complaints filed with the FEC. In connection with its investigation the Commission issued a combined subpoena and order requiring TLC to produce documents and other materials and to answer written questions. *See* 2 U.S.C. § 437d(a)(1) and (3). TLC moved to quash the subpoena and order. The Commission denied the motion and demanded compliance. When TLC failed to respond, the Commission made this application.

## Background

"A district court's review of an [administrative] subpoena is 'extremely limited,' 'extremely narrow,' and of 'a summary nature.' " *N.L.R.B. v. North American Van Lines, Inc.*, 611 F.Supp. 760, 763 (N.D. Ind.1985); *Fed. Elec. Com'n v. Los Angeles Labor Committee*, 648 F.Supp. 523, (C.D.Cal.1986). A court should enforce an administrative subpoena where the inquiry is for a proper purpose, the information sought is relevant to that purpose and the statutory procedures are observed. *See United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401

(1950); *Fed. Elec. Com'n v. Citizens For LaRouche,* No. 80–0203, slip op. at 3 (D.C. D.C. September 30, 1980). Where the Commission's demand for information will implicate a protected First Amendment interest, it must proffer a compelling governmental interest before the court will compel disclosure. *NAACP v. Alabama,* 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958); *Buckley v. Valeo,* 424 U.S. 1, 64–66, 96 S.Ct. 612, 656–657, 46 L.Ed.2d 659 (1976); *Federal Elec. Com'n v. Machinists Non-Partisan Political League,* 655 F.2d 380, 389 (D.C.Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981).

Here the inquiry has a legitimate purpose. The Commission administers and enforces the Act and the Matching Fund Act, and it is pursuant to that responsibility that it is investigating TLC. This court determined today in *Spannaus v. Fed. Elec. Com'n,* 641 F.Supp. 1520 that that investigation is a legitimate exercise of the Commission's statutory authority, and that the Commission has observed its procedural guidelines. By the affirmative vote of at least four of its members, the Commission found reason to believe that TLC has violated or is about to violate the statutes by reporting and providing to the Commission false information concerning contributions and loans. 2 U.S.C. § 437g(a)(2). The subpoena and order seek information to determine whether those violations will be proven. The subpoena and order were properly issued in compliance with the statute, 2 U.S.C. § 437d(a)(1) and (3), which state that "[t]he Commission has the power ... to require by ... order [ ] ... such written reports and answers to questions as the Commission may prescribe ... and ... to require by subpena [sic] ... the production of all documentary evidence relating to the execution of its duties".

TLC asserts, however, that "this information is protected by the First Amendment and disclosure should not be compelled without [a] showing of a compelling interest and strict adherence to procedural safeguards." Plt.Mem. in Opp. at 12. In particular, TLC opposes disclosure to the FEC of the identities of its members, volunteers and supporters. It claims that "those identified as actual or potential supporters of the campaign will suffer detriment to their privacy and associational rights" and that "TLC will suffer similar detriment to its ability to retire its campaign debt and otherwise seek support for and express its political views." *Id.* at 14.

### Discussion

"[T]he Supreme Court has held that the compelled disclosure of an individual's affiliation with an organization may, standing alone, constitute a serious intrusion on the First Amendment right to privacy of association and belief." *Jones v. Unknown Agents of the Fed. Elec. Com'n,* 613 F.2d 864, 874 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980) (discussing *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488). "[T]he right to political association is implicated in the compelled disclosure not only of organization ties, but also of campaign contributions." *Ibid.* An individual's associational interests, however, must give way when the governmental interest in requiring disclosure is sufficiently compelling. *Buckley v. Valeo,* 424 U.S. at 64, 96 S.Ct. at 656; *see Fed. Elec. Com'n v. Machinists Non-Partisan Political League,* 655 F.2d at 389.

The investigation being pursuant to statutory authority, "a compelling interest" is shown. *Fed. Elec. Com'n v. Machinists Non-Partisan Political League,* 655 F.2d at 389; *Fed. Elec. Com'n v. Citizens for Freeman,* 602 F.Supp. 1250, 1251 (D.Md. 1985). The FEC's interest in obtaining information to determine whether TLC violated the Act by reporting and providing to the FEC false information concerning contributions and loans is sufficiently compelling to justify requiring disclosure of actual solicitors and contributors, but no (at least on any showing made here) of potential contributors and lenders. *Compare Jones v. Unknown Agents of the Fed. Elec. Com'n,* 613 F.2d at 875 (government's com-

pelling interest in enforcing the Act would be undermined if a candidate or his authorized committee were maintaining records of fraudulent campaign contributions).

■ TLC correctly asserts that a court must be particularly mindful of potential damage to associational interests when enforcing a subpoena against minor political parties and their members. *Buckley v. Valeo*, 424 U.S. at 71, 96 S.Ct. at 659. But even so, "the governmental interests underlying the disclosure provisions of the Federal Election Campaign Act [are] sufficiently compelling to outweigh the possible harm to the associational rights of minor parties and their members", *Jones v. Unknown Agents of the Fed. Elec. Com'n*, 613 F.2d at 877, unless an organization can make a showing similar to that made in *NAACP v. Alabama*,—"that on past occasions revelation of the identity of its rank-and-file members [had] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462, 78 S.Ct. at 1171; *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 103 S.Ct. 416, 425, 74 L.Ed.2d 250 (1982) (First Amendment prohibits state from compelling disclosures by minor party that will subject those identified to reasonable probability of threats, harassment or reprisals); *Buckley v. Valeo*, 424 U.S. at 71, 96 S.Ct. at 659; *see Jones v. Unknown Agents of Fed. Elec. Com'n*, 613 F.2d at 877. That is not the case here. Indeed, in *Spannaus v. Fed. Elec. Com'n*, 641 F.Supp. 1520, a case cited by TLC as an example of the history of antagonism between itself and the FEC, this court determined that TLC had failed to show that the FEC was conducting its investigations of TLC in bad faith and granted summary judgment to the FEC.

The FEC's subpoena requests documents from TLC relating to (1) solicitation of contributions and loans to TLC, including a list of the names of solicitors, persons solicited and potential contributors and lenders; (2) contributions and loans received, including all bank records of those transactions; and (3) telephone bills, message slips and records of telephone calls made or received by TLC. The interrogatories contained in the order request (1) the identification of all individuals who worked for TLC in 1984, including officers and directors, and their residential and business addresses; (2) the street addresses of TLC's offices in 1984; and (3) telephone numbers and extensions used by TLC in 1984. *See* FEC Exh. 4.

Most of this information is relevant to the FEC's investigation. The identification of all those who either solicited funds or from whom funds were solicited for TLC is relevant to the question whether TLC has fraudulently reported as funds monies that were not intended as such. Similarly relevant are TLC's records, including bank memoranda, documenting the amounts actually received as contributions or loans and debits against TLC's accounts resulting from nonauthorization of credit card charges and stop payments on checks. TLC's telephone bills, logs and message slips are relevant and need be produced only to the extent that those documents relate to the solicitation of funds on behalf of TLC. Similarly, the identifications of directors, officers and other members of TLC requested in the first interrogatory appear relevant and need be disclosed only insofar as they relate to persons responsible for the solicitation of contributions and the lines of responsibility for the supervision of those persons. Such identification may properly include both home and business addresses. The information requested in the second and third interrogatories (TLC's 1984 addresses and telephone numbers) appears relevant. The subpoena and order describe with sufficient specificity the information sought, and TLC has not shown that compliance, with the modifications directed above, will be unduly burdensome. *See Fed. Trade Com'n v. Texaco, Inc.*, 555 F.2d 862 (D.C.Cir.) (en banc), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977).

■ The subpoena also requests "lists or other documents considered by the Committee ... in determining who would be

potential contributors or lenders ... [and] ultimate lists or other documents containing names of potential contributors and lenders to be solicited''. FEC Exh. 4 at 4, No. 1. That information does not appear to be relevant to the purpose of the FEC's investigation—to determine whether TLC has violated the Act or Matching Fund Act by reporting false information to the FEC, nor does the FEC explain its relevance. Accordingly, the FEC is not entitled to that information.

### Conclusion

The Commission's subpoena and order are overly broad, to the extent described above. Accordingly, it is hereby

ORDERED, that Petitioner's motion to enforce the subpoena and order as submitted is granted with the modifications and limitations set forth above.